UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**FRANK L. SHERNOFF,**

                              **PLAINTIFF,**

                **-v-**                                  **5:05-CV-1276**

**BRUCE SODEN, GREENE, HERSHDORFER & SHARPE,
AND SUTTON INVESTING CORP.,**

                              **DEFENDANTS.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Frank L. Shernoff, Esq.
Plaintiff, *pro se*

Martin, Clearwater Law Firm
Michael A. Sonkin, Esq., of Counsel
220 East 42nd Street
New York, New York 10017-5842
Counsel for Defendants Bruce Soden and Greene, Hershdorfer & Sharpe, LLP

**Hon. Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

In this action for defamation, tortious interference with contract, and tortious interference with prospective business advantage, plaintiff, a lawyer proceeding *pro se*, moves for summary judgment (Dkt. No. 25) against defendant Greene, Hershdorfer and Sharpe, LLP ("GH&S"), a law firm, and defendant Bruce Soden, Esq., a lawyer and a partner in GH&S (collectively "defendants"). Defendants cross-move for summary judgment (Dkt. No. 35). Sutton Investing Corp. ("Sutton") never appeared or answered, and it appears that plaintiff has discontinued the action as against it. For the reasons set forth herein, the Court denies plaintiff's motion, grants

defendants' motion, and dismisses the action.

**AMENDED COMPLAINT**

The background factual allegations in the amended complaint (Dkt. No. 3) are as follows. In August 2002, defendants agreed to represent Sutton in a lawsuit against the City of Syracuse for waste, nuisance, and trespass ("underlying litigation"). In connection with this representation agreement, defendants drafted a retainer agreement, which they sent to Sutton for signature.

According to the amended complaint, before signing the proposed retainer agreement, Sutton retained the plaintiff herein, a lawyer, to manage all aspects of the underlying litigation, including defendants' legal work and billing practices. Upon reviewing the proposed retainer agreement, plaintiff modified it to include a provision that defendants would prosecute the underlying litigation at the direction of Sutton's counsel. Defendants signed the modified retainer agreement. Sutton then directed defendants, in writing, to prosecute the underlying litigation at plaintiff's direction.

The amended complaint avers that, during the course of the underlying litigation, defendants "resented [plaintiff] Shernoff's management and direction on matters of legal strategy, and they resented Shernoff's challenges to their bills and billing practices." Thus, plaintiff claims, defendants "determined to take 'counter action' against Shernoff, in order to have him removed, by Sutton, from his management and oversight of the Underlying Litigation." Plaintiff claims that defendants defamed him, tortiously interfered with his attorney-client relationship with Sutton, and tortiously induced Sutton to dismiss him from his position as litigation manager.

In the first cause of action, for tortious interference with contract, plaintiff claims that he "had a contractual, business, and/or attorney-client relationship with Sutton, including his appointment as Litigation Manager in the Underlying Litigation"; that defendants knew of that

relationship; and that they "induced Sutton to terminate the said relationship."

The second cause of action is for "unlawful interference with prospective economic advantage." Plaintiff claims that, by virtue of his relationship with Sutton, he had a reasonable expectation of economic advantage; that defendants knew of that expectation; that they wrongfully interfered with that expectation; and that, in the absence of defendants' wrongful acts, plaintiff would have realized economic advantage or benefit from his relationship with Sutton.

The third, fourth and fifth causes of action allege that defendants defamed plaintiff to Sutton and others. Each of these causes of action asserts that the defamatory statements were not aimed at securing any benefit for Sutton in the underlying litigation; that the statements did not tend to and were not intended to prove Sutton's claims in the underlying action; that the statements were not directed toward the achievement of Sutton's litigation goals; and that they were not uttered as a client advocacy function. Each of these causes of action also avers that the statements complained of constituted defamatory statements of fact and libel *per se*; that they concerned plaintiff, were false, and were communicated to persons other than plaintiff; and that defendants knew they were false, communicated them with reckless disregard of their truth or falsity, and were negligent in failing to ascertain the falsity of the statements before communicating them.

In his third cause of action, plaintiff alleges that defendants made defamatory statements about him to Sutton as follows:

> Among other things, the defendants told Sutton that:
> a) Shernoff is a thorn in the foot of the case (i.e., the Underlying Litigation).
> b) The Lawyers [*i.e.*, defendants] would not knowingly choose to work for Shernoff or under his direction.
> c) Shernoff's legal advice was very annoying and unhelpful.
> d) Shernoff's legal work threatened Sutton's litigation objectives.
> e) Shernoff's oversight of the Lawyers work and billing practices "necessitated counter action," *i.e.*, his dismissal from the case.
> f) The Lawyers suborned a perjured affidavit from Sutton in an effort to

-3-

> discredit Shernoff and procure his dismissal from the case.
> g) In April 2005, the Lawyers attempted to suborn further perjured testimony from Sutton in a defamatory effort to absolve themselves from liability in this lawsuit.

(Paragraph numbering omitted.)

The fourth cause of action claims that defendants made defamatory statements about plaintiff directed to one or more justices of the Supreme Court of the State of New York. In support of this cause of action, the amended complaint alleges:

> Among other things, the defendants told one or more Supreme Court Justices that:
> a) Shernoff's affidavit to the Court was comprised of "outright falsehoods."
> b) Shernoff's affidavit to the Court was comprised of "partial falsehoods."
> c) Shernoff appeared before the Court without authority.
> d) The Lawyers submitted a false affidavit to the Court, obtained by subornation, intended to discredit Shernoff and procure his dismissal from the case.

(Paragraph numbering omitted.)

In his fifth cause of action, plaintiff alleges that defendants made defamatory statements about plaintiff to one or more judges of the Appellate Division of the State of New York, as follows:

> Among other things, the defendants told one or more Appellate Division Judges that:
> a) Shernoff's affidavit to the Appellate Division was comprised of complete and partial falsehoods.
> b) The facts adduced by Shernoff in the Appellate Division were false.
> c) The Lawyers submitted a false affidavit to the Court, obtained by subornation, intended to discredit Shernoff and procure his dismissal from the case.

(Paragraph numbering omitted.)

The sixth cause of action is for breach of contract against defendants, as well as Sutton. Plaintiff claims that defendants "caused or induced Sutton to breach its contract with the Plaintiff" and that "[a]t the insistence of the defendants and under duress applied by them,

-4-

Sutton dismissed the Plaintiff from his position as Litigation Manager."

## DISCUSSION

**Summary judgment standard**

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). If the nonmovant fails to carry this burden, summary judgment is appropriate. *See Celotex,* 477 U.S. at 323.

**Defamation**

Whether a statement is defamatory is a question of law to be resolved by the court. *See Aronson v Wiersma*, 65 NY2d 592, 593-94 (1985). To be defamatory, a statement must be false. A defamation claim cannot, therefore, be based upon the assertion of an opinion which neither states actual facts nor implies that it has a factual basis. *See Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995). Protected opinion includes "rhetorical hyperbole," "vigorous epithets," and "imaginative expressions of contempt"; such expressions cannot reasonably be interpreted as stating actual facts or as implying a factual basis. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17 (1990); *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152 (1993).

As explained by New York's high court:

The dispositive inquiry, under either Federal or New York law, is whether a

> reasonable reader could have concluded that the articles were conveying facts about the plaintiff. Since falsity is a necessary element of a defamation cause of action and only facts are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action. In our State the inquiry, which must be made by the court, entails an examination of the challenged statements with a view toward (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Gross*, 82 N.Y.2d at 152-53 (internal quotes, citations, and alterations omitted); *accord, Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000); *see, e.g., Steinhilber v. Alphonse*, 68 N.Y.2d 283, 292-94 (1986) (statements in union dispute that former union member was a "scab" and lacked talent, ambition and initiative, were nonactionable expressions of opinion); *Lacher v. Engel*, 817 N.Y.S.2d 37, 42 (1st Dep't 2006) (statement that plaintiff was a "pathological character" was nonactionable opinion); *Versaci v. Richie*, 815 N.Y.S.2d 350, 351-52 (3rd Dep't 2006) (statement referring to attorney as "so called attorney" was opinion); *Parks v. Steinbrenner*, 520 N.Y.S.2d 374, 377-78 (1st Dep't 1987) (statements that plaintiff umpire was "not capable", that "he doesn't measure up" and that he "misjudges" plays are opinion).

Under New York law, the limitations period applicable to defamation actions is one year from the date the statement was made. N.Y.C.P.L.R. 215(3). Here, the initial complaint was filed in the Eastern District of New York on March 31, 2005. Thus, claims based on statements made prior to March 31, 2004, are time-barred.

The following statements on which plaintiff relies are time-barred. In an e-mail to Simon Srybnik, Sutton's President, dated September 17, 2002, Shernoff stated: "Terry McHugh told me

-6-

that Bruce [Soden] 'hates my guts.'"[1]  In a letter to plaintiff, copied to Srybnik, dated September 19, 2002, Soden stated that plaintiff's management of the case was "very annoying and unhelpful to the common cause," and added, "I will not beg reviewing counsel [*i.e*., plaintiff] for your cooperation to benefit our mutual client."  And in a letter dated October 9, 2002, Soden told Srybnik that he would not knowingly choose to work for plaintiff or under his direction.

In addition to being time-barred, these statements are not actionable.  They do not involve provable factual assertions, nor do they imply that they have a factual basis.  Further, they were made in the course of extensive correspondence in September and October 2002 regarding defendants' efforts to obtain plaintiff's approval of defendants' proposed notice of claim and their plan to move for leave to file a late notice of claim on behalf of Sutton against the City.  In view of the nature and content of the communications and the larger context of the relationships of the parties and the ongoing correspondence among them, as a matter of law these statements are nonactionable opinion.

Before addressing the statements made within the one-year statutory period, the Court briefly summarizes the surrounding events.  Defendants' motion for leave to file a late notice of claim on behalf of Sutton against the City of Syracuse was granted by New York State Supreme Court.  The City filed an appeal, returnable before the Appellate Division, Fourth Department, on September 8, 2004.

On June 2, 2004, defendants moved before the Appellate Division, returnable June 28, 2004, for leave to withdraw from representation of Sutton on the appeal, on the ground that disagreements with plaintiff hampered their ability to represent Sutton.  Plaintiff submitted an

---

[1] In any event, this double-hearsay statement has no probative value.

affirmation dated June 10, 2004 in partial opposition to defendants' withdrawal motion.  On June 24, 2004, the City cross-moved in the Appellate Division to disqualify defendants from representing Sutton; according to defendants, the City's motion relied in part on averments in plaintiff's June 10, 2004 affirmation.

Similarly, defendants moved on June 2, 2004 before New York State Supreme Court to withdraw from representation of Sutton in the underlying action.  Plaintiff submitted an opposing affirmation dated June 10, 2004.  The City cross-moved to disqualify defendants, again allegedly relying on plaintiff's affirmation.  It appears that the motion and cross motion were returnable in Supreme Court on July 16, 2004.

At a meeting with defendants on June 16, 2004, Srybnik agreed to replace plaintiff with Terry McHugh as Sutton's litigation manager in the matter.  Thereafter, defendants withdrew their motions for leave to withdraw from representation of Sutton.  However, the City continued to pursue its cross motions.

In a July 12, 2004 e-mail to Srybnik, Soden stated: "I am fighting the City motion, inspired and aided by the Shernoff affidavit, to remove this firm as Sutton Attorney.... I seek to discredit the Shernoff affidavit and give the trial court another basis to decide for us...."  In the same e-mail, Soden stated:

> I do not understand Shernoff's recent statement that he will appear in Syracuse at the argument of the motion now scheduled for 7/16 and seek to argue.  For whom?  He refuses to answer that basic question.  He has no standing as he represents no party and has no Intervenor status.
>
> ... I think GH&S has a better than even chance of being allowed to continue [to represent Sutton].  If Shernoff gets up and creates some scene, the chances reduce.  If you have any control over him keep him home on 7/16.

There is nothing defamatory in any of these statements.  The statement that GH&S will

"seek to discredit the Shernoff affidavit" is simply a description of legal strategy and cannot reasonably be construed as defamatory.  The statements to the effect that plaintiff might "create a scene" and that Srybnik should keep him home if he had any control over him are rhetorical hyperbole.  This is clear from the nature of the language used, the tone of the entire communication, the absence of provable factual assertions or implied factual basis, the fact that the recipient of the communication, Srybnik, was fully aware of the disputes between Soden and plaintiff, and the larger context in which the statements were made.  With respect to context, it is significant that, according to defendants, the City's motion to disqualify defendants from representing Sutton was "inspired and aided" by plaintiff; in other words, defendants perceived plaintiff as working against them in this aspect of their dispute with the City.  As a matter of law the statements are protected opinion.

Plaintiff also relies on an e-mail from Soden to Srybnik and Terry McHugh, dated July 16, 2004, referring to plaintiff as "a thorn in the foot of the case."  The reference is clearly rhetorical hyperbole.  It is obviously not an assertion of fact.  It was made in reaction to a message to Soden from plaintiff stating: "Please be advised of my intent to recover damages against you and your firm for defamation and tortious interference."  The nature of the language used, the tone of the entire communication, the fact that the recipients, Srybnik and McHugh, were fully aware of the disputes between Soden and plaintiff, and the larger context in which the statements were made establish as a matter of law that the comment is nonactionable opinion.

On August 3, 2004, Soden wrote to Sutton enclosing a bill for services for June and July 2004.  In a paragraph explaining recent activity in the case, Soden wrote: "Mr Shernoff's activity threatened the client's objective of having GH&S remain as its attorney and necessitated counter action."  There is nothing defamatory about this statement of legal opinion and strategy.

-9-

Finally, plaintiff claims that, in affidavits before the Supreme Court and the Appellate Division, defendants accused plaintiff of making false statements in his affirmations to those courts. According to plaintiff, Soden thus effectively characterized him as a liar and perjurer. Defendants submitted the affidavits in issue in support of their motions for leave to withdraw from representation of Sutton in the underlying action. The purport of the affidavits is that the motions to withdraw were in large part necessitated by the problems between plaintiff and defendants. The statements about plaintiff in those affidavits are directly pertinent to defendants' reasons for seeking to withdraw. Thus, under New York law, the statements are absolutely privileged. *See Aequitron Med., Inc. v. Dyro*, 999 F.Supp. 294, 297-98 (E.D.N.Y. 1998), *and cases cited therein.*

Accordingly, plaintiff has failed to show that he is entitled to judgment as a matter of law on the third, fourth and fifth causes of action, and his motion for summary judgment on these causes of action is denied. Defendants have shown that they are entitled to judgment on these causes of action as a matter of law, and plaintiff has failed to demonstrate the existence of a disputed question of fact requiring trial. Thus, defendants' cross motion for summary judgment dismissing the third, fourth and fifth causes of action is granted.

**Tortious interference with contract**

Plaintiff's first cause of action claims that defendants tortiously interfered with his contract with Sutton. A claim of tortious interference with contract requires proof of (1) the existence of a valid contract between plaintiff and a third party, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of a breach of the contract without justification, (4) actual breach of the contract, and (5) resulting damages. *See Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 424 (1996).

On this record, plaintiff cannot prove the first element, the existence of a valid contract

-10-

between him and Sutton. The undisputed evidence establishes as a matter of law that there was no valid existing contract between them such as would support a claim against defendants for tortious interference with contract. Srybnik states in his affidavit that shortly after Sutton retained defendants to sue the City of Syracuse, "Sutton retained Frank Shernoff to review certain documents prepared by Mr. Soden, and to manage all aspects of the lawsuit." Srybnik does not spell out the nature of the "retainer." However, plaintiff admits that he has never had a written agreement with Sutton, and that he "receive[s] no benefits from Sutton other than (1) payment for services rendered, and (2) the expectation of future assignments in exchange for work performed promptly and well." In other words, Sutton was free to instruct plaintiff to stop working on a project at any time, and was obligated to pay plaintiff only for services already rendered. As such, the agreement between plaintiff and Sutton was terminable at will. *See, e.g., American Preferred Prescription, Inc. v. Health Mgt., Inc*., 678 N.Y.S.2d 1, 4 (1st Dep't 1998). Agreements that are terminable at will are classified as prospective contractual relations, and thus do not support claims for tortious interference with contract. *See Guard-Life v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191-92 (1980); *American Preferred Prescription*, 678 N.Y.S.2d at 4.

The classification of the agreement between plaintiff and Sutton as terminable at will is not altered by plaintiff's statement that "it was our long-time custom, practice, and agreement that matters assigned to me would remain under my purview until completion." This statement does no more than assert that plaintiff expected that Sutton would not exercise its right to terminate his services; it asserts no contractual right. *See Guard-Life*, 50 N.Y.2d at 192, n.4. Based on the undisputed terms of the agreement in issue, plaintiff cannot make out a claim for tortious interference with contract.

Moreover, the Court finds that the record evidence, construed most favorably to plaintiff,

-11-

demonstrates that he cannot prove the third element, that is, that any breach procured by defendants was procured without justification. The undisputed record evidence amply demonstrates that the relationship between plaintiff and defendants was such that defendants reasonably concluded that they were unable to represent Sutton's interests effectively and that they should move for leave to withdraw from representing Sutton. There is no evidence that in so moving, more than three months before a scheduled appellate argument, defendants acted improperly or without justification. Nor does Srybnik's October 21, 2004 affidavit regarding his reasons for requesting that plaintiff take no further action with respect to the case suggest any improper conduct on the part of defendants. Rather, on this record, defendants' conduct was reasonable and proper.

Plaintiff has failed to show that he is entitled to judgment as a matter of law on his claim for tortious interference with contract, and his motion for summary judgment on the first cause of action is denied. Defendants have shown that they are entitled to judgment on the first cause of action as a matter of law, and plaintiff has failed to demonstrate the existence of a disputed question of fact requiring trial. Thus, defendants' cross motion for summary judgment dismissing the first cause of action is granted.

**Tortious interference with prospective business advantage**

Plaintiff's second cause of action is for tortious interference with prospective economic advantage. While the lack of an existing valid contract is a bar to a claim for tortious interference with contract, it is not a bar to a claim for tortious interference with business relations. *See Scutti Enterprises, LLC. v. Park Place Entertainment Corp.*, 322 F.3d 211, 215 (2d Cir. 2003). Such a claim can be based on a showing that defendant tortiously interfered with "a continuing business or other customary relationship not amounting to a formal contract." *Id.* (citations omitted). To

-12-

make out a claim for tortious interference with business relations under New York law, plaintiff must show that: "(i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship." *Id.*

The *Scutti* court characterized the third element as requiring a showing of "wrongful means," defined in this context as "representing physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the [prospective] contract." *Id.* (citations and internal quotes omitted). New York's high court observed: "The requirement of wrongful means where only prospective rights are threatened honors free and lawful competition and accords an appropriate level of protection to a plaintiff's interest – by definition not its contract rights – in its expectancy of future benefits." *NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc*., 87 N.Y.2d 614, 624 (1996).

In the case at bar, defendants urge that as a matter of law, plaintiff's allegations, even if true, would not satisfy the third element because they do not support a finding that defendants acted for a wrongful purpose or used dishonest, unfair, or improper means. Plaintiff contends that defendants' malicious purpose and their dishonest, unfair or improper means are demonstrated by the following: (1) Soden's statement of intent to take "counter action" against plaintiff; (2) Soden's written resolution to "discredit" plaintiff; (3) the statements relied on by plaintiff in his defamation claims; and (4) Soden's subornation of perjury.

As noted above, Soden used the term "counter action" in a letter to Sutton on August 3, 2004, enclosing a bill for services for June and July 2004. In a paragraph explaining recent activity in the case, Soden wrote: "Mr. Shernoff's activity threatened the client's objective of

-13-

having GH&S remain as its attorney and necessitated counter action." Any reasonable reader viewing this statement in context would construe the term "counter action" as referring to action taken by defendants in June and July 2004 to oppose the City's cross motions, returnable in the Appellate Division on July 16, 2004 and in Supreme Court on July 19, 2004, to disqualify defendants from representing Sutton. It cannot reasonably be read as evidence of malicious purpose against plaintiff himself or of an intention to use wrongful means to interfere with plaintiff's prospective business relations with Sutton.

With respect to Soden's alleged resolution to"discredit" plaintiff, Soden uses the word "discredit" in the context of the following statement in Soden's July 12, 2004 e-mail to Srybnik: "I am fighting the City motion, inspired and aided by the Shernoff affidavit, to remove this firm as Sutton Attorney.... I seek to discredit the Shernoff affidavit and give the trial court another basis to decide for us...." Clearly, the statement means that Soden intends to discredit the allegations in plaintiff's affidavit as part of Soden's strategy in opposing the motion to disqualify defendants as Sutton's counsel; it cannot reasonably be read as evidence of malicious purpose against plaintiff himself or of an intention to use wrongful means to interfere with plaintiff's prospective business relations with Sutton.

Plaintiff also relies on the other allegedly defamatory statements made by Soden. The Court has already held that the statements are not defamatory. Nor are they evidence of wrongful purpose or dishonest, unfair, or improper means.

Further, defendants' motions to withdraw from representation of Sutton were made more than three months prior to the return date of the City's appeal from the order granting Sutton leave to serve a late notice of claim. Certainly this gave Sutton ample time to obtain new counsel, and is not evidence of economic pressure or duress.

-14-

Soden's alleged conduct in suborning perjury from Srybnik occurred on July 13, 2004, almost a month after Srybnik had terminated plaintiff from his role in handling the underlying litigation and replaced him with Terry McHugh. It cannot be viewed as part of a larger fraudulent scheme, *see generally Retina Assocs. of Long Is. v. Rosberger*, 751 N.Y.S.2d 50, 52 (2d Dep't 2002), inasmuch as the alleged purpose of the scheme – plaintiff's termination – had already been accomplished. It does not demonstrate wrongful purpose or dishonest, unfair, or improper means in seeking plaintiff's termination. Rather, the record establishes that Soden's purpose in obtaining the affidavit was to counter certain allegations in plaintiff's June 10, 2004 affirmations submitted in partial opposition to defendants' motions for leave to withdraw from representation of Sutton. Moreover, the record does not demonstrate that Soden had reason to believe that his characterization of plaintiff's relationship with Sutton in the July 13, 2004 affidavit was false, nor does it demonstrate that Soden's letter of April 21, 2005 was in any way improper.

The Court has reviewed the other matters raised by plaintiff in connection with this cause of action. They do not support plaintiff's claim nor do they raise a question of fact. Plaintiff has failed to show that he is entitled to judgment as a matter of law on his claim for tortious interference with prospective economic advantage, and his motion for summary judgment on the second cause of action is denied. Defendants have shown that they are entitled to judgment on the second cause of action as a matter of law. Defendants' cross motion for summary judgment dismissing the second cause of action is granted.

**Breach of contract**

In light of the decision herein, there is no basis for the sixth cause of action for breach of contract against defendants. Plaintiff's motion for summary judgment on the sixth cause of action is denied, and defendant's cross motion for summary judgment dismissing the sixth cause of action

is granted.

## NEW EVIDENCE

By letter dated June 5, 2006 (Dkt. No. 45), plaintiff seeks to reopen the summary judgment record to allow him to add new evidence. Defendants oppose (Dkt. No. 47). The evidence, correspondence from May 2006, is not relevant to the issues herein and will not assist plaintiff on these motions. Plaintiff's request is denied.

## CONCLUSION

It is therefore

ORDERED that plaintiff's motion (Dkt. No. 25) for summary judgment is denied; and it is further

ORDERED that defendants' cross motion (Dkt. No. 35) for summary judgment is granted; and it is further

ORDERED that the action is dismissed in its entirety with prejudice.

IT IS SO ORDERED.

September 28, 2006
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge